UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHERYL ANGELO, Personal Representative of the ESTATE OF RICHARD ANGELO, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-12177-LTS |
| USA TRIATHLON, | ) ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

September 18, 2014

SOROKIN, D.J.

This action arises from a tragic set of facts in which Richard Angelo died while participating in the swim portion of a triathlon organized by the defendant, USA Triathlon ("USAT"). Plaintiff Cheryl Angelo ("the plaintiff"), as personal representative of Richard Angelo ("Angelo" or "the decedent"), has brought claims of wrongful death, conscious pain and suffering, and negligent infliction of emotional distress. USAT has counterclaimed for indemnity against any liability and legal costs associated with this action pursuant to indemnity agreements executed by the decedent prior to his participation in the triathlon. USAT has now moved for partial summary judgment on its claim for indemnity. Doc. No. 18. The plaintiff has opposed the Motion. Doc. No. 19. For the reasons stated below, USAT's Motion is ALLOWED IN PART and DENIED IN PART.

I.     STATEMENT OF FACTS

The following facts are stated in the light most favorable to the plaintiff as the nonmoving party, although the key facts for the purposes of this motion are not disputed. Angelo was a member of USAT since, at the latest, 2011. Doc. No. 18-1 at 1 ¶ 3. When Angelo last renewed his membership on August 12, 2011, he agreed to and electronically signed a "Waiver and Release of Liability, Assumption of Risk and Indemnity Agreement." Id. at 1 ¶ 3, 4. That agreement only required the member to execute the document, and, accordingly, the plaintiff did not sign the form. Id. at 4-5. That document contained a provision that, in its entirety, reads as follows:

> 4. I hereby Release, Waive and Covenant Not to Sue, and further agree to Indemnify, Defend and Hold Harmless the following parties: USAT, the Event Organizers and Promoters, Race Directors, Sponsors, Advertisers, Host Cities, Local Organizing Committees, Venues and Property Owners upon which the Event takes place, Law Enforcement Agencies and other Public Entities providing support for the Event, and each of their respective parent, subsidiary and affiliated companies, officers, directors, partners, shareholders, members, agents, employees and volunteers (Individually and Collectively, the "Released Parties" or "Event Organizers"), with respect to any liability, claim(s), demand(s), cause(s) of action, damage(s), loss or expense (including court costs and reasonable attorneys [sic] fees) of any kind or nature ("Liability") which may arise out of, result from, or relate to my participation in the Event, including claims for Liability caused in whole or in part by the negligence of the Released Parties. I further agree that if, despite this Agreement, I, or anyone on my behalf, makes a claim for Liability against any of the Released Parties, I will indemnify, defend and hold harmless each of the Released Parties from any such Liability which any [sic] may be incurred as the result of such claim.

Id. at 4.

USAT arranged to hold its National Age Group Championship on August 18, 2012, in Burlington, Vermont. Id. at 2 ¶ 5. On February 17, 2012, Angelo registered for the championship and, as part of his registration, electronically signed an indemnity agreement identical to the one excerpted above. Id. at 2 ¶ 6. As with the prior agreement, only Angelo as the participant was required to, and in fact did, sign the form. Doc. Nos. 18-1 at 33-34, 19-2 at 3.

2

Angelo competed in that triathlon and died during his participation in the swim portion of that event or shortly thereafter. Doc. No. 18-2 at 11-12.

The plaintiff, the decedent's wife and the personal representative of his estate, then brought this action in Essex Superior Court, alleging wrongful death, conscious pain and suffering by the decedent, gross negligence resulting in the decedent's death, and negligent infliction of emotional distress suffered by the plaintiff, who was present at the site of the race. Doc. No. 6 at 12-16. USAT subsequently removed the action to this Court. Doc. No. 1.

II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party "has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). The Court is "obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III.     DISCUSSION

USAT has moved for partial summary judgment on their counterclaim for indemnity.[1] USAT asserts that the decedent's execution of the two release and indemnity agreements ("the indemnity agreements") released or indemnified, or both, all claims that arise from his participation in the National Age Group Championship, including all claims brought by the plaintiff in this action. The plaintiff counters that the indemnity agreements could not function to release her claims for wrongful death or negligent infliction of emotional distress, and that an indemnity agreement is not enforceable insofar as it exempts the indemnitee from liability for its own grossly negligent conduct.

Under Massachusetts law,[2] "[c]ontracts of indemnity are to be fairly and reasonably construed in order to ascertain the intention of the parties and to effectuate the purpose sought to be accomplished." Post v. Belmont Country Club, Inc., 805 N.E.2d 63, 69 (Mass. App. Ct. 2004) (quoting Shea v. Bay State Gas Co., 418 N.E.2d 597, 600 (Mass. 1981)). Indemnity contracts that exempt a party from liability arising from their own ordinary negligence are not illegal. Id. at 70. Further, contracts of indemnity can survive a decedent's death and become an obligation of a decedent's estate. Id. at 71.

Here, the language in the indemnity provision is broad. The plaintiff argues, briefly, that the indemnity agreements are ambiguous as to who is bound by the agreements. The Court disagrees. The agreement clearly states that "I . . . agree to Indemnify, Defend and Hold Harmless" the released parties from liability "of any kind or nature . . . which may arise out of, result from, or relate to my participation in the Event." Doc. No. 18-1 at 4. By the plain

---

[1] The Court understands this motion for summary judgment to be limited to the scope of the release and indemnity agreement and its application to the plaintiff's claims as raised in the Complaint and as amplified in the motion papers. Despite USAT's argument to the contrary, the Court does not believe this motion to be an appropriate vehicle to address the substantive merits of the plaintiff's pleadings or claims.
[2] The parties do not contend that the law of any other state applies.

4

language of the provision, the signatory of the agreement agreed to indemnify USAT for any losses arising from his participation in the triathlon, including losses and damages associated with lawsuits arising from his participation. See Post, 805 N.E.2d at 70. Both the scope of the indemnity and the party bound by the agreement are clear and unambiguous. A close examination is required, however, to ascertain the applicability of the provision to the specific claims raised and the sources available to satisfy the indemnity.

### A. Counts 1 and 3: Wrongful Death

The first count in the plaintiff's Complaint alleges wrongful death due to USAT's negligence. The third count alleges wrongful death due to USAT's gross negligence and seeks punitive damages. Under Massachusetts law, an action for wrongful death is "brought by a personal representative on behalf of the designated categories of beneficiaries" set forth by statute. Gaudette v. Webb, 284 N.E.2d 222, 229 (Mass. 1972); see Mass. Gen. Laws ch. 229, §§ 1, 2. "The money recovered upon a wrongful death claim is not a general asset of the probate estate, but constitutes a statutory trust fund, held by the administratrix as trustee for distribution to the statutory beneficiaries."[3] Marco v. Green, 615 N.E.2d 928, 932 (Mass. 1993) (quoting Sullivan v. Goulette, 182 N.E.2d 519, 523 (Mass. 1962)). These aspects of Massachusetts law have led another judge of this Court to the conclusion that "[w]rongful death is not, in any traditional sense, a claim of the decedent." Chung v. StudentCity.com, Inc., Civ. A. 10-10943-RWZ, 2011 WL 4074297, at *2 (D. Mass. Sept. 9, 2011).

As stated above, the indemnity agreements signed by the decedent, by their terms, clearly were intended to indemnify losses arising from an action for wrongful death as a claim "aris[ing]

---

[3] The Massachusetts Legislature has created limited statutory exceptions whereby the recovery on a wrongful death claim may be reached to pay certain specified expenses. Mass. Gen. Laws ch. 229, § 6A. None of those exceptions are implicated by the present Motion. See id.

5

out of" the decedent's participation in the triathlon. Thus, USAT is entitled to indemnity on losses resulting from that claim. That does not end the matter, however, because the parties raise the question of where USAT may look in order to satisfy the indemnity obligation. The decedent, while having authority to bind his estate, see Post, 805 N.E.2d at 71, lacked authority to bind his surviving family members who did not sign the indemnity agreements and are not bound thereby, see Chung, 2011 WL 4074297, at *2. Accordingly, to satisfy the indemnity obligation, USAT may look to the assets of the decedent's estate. See Post, 805 N.E.2d at 71 (noting that a contract of indemnity agreed to by a decedent became an obligation of the decedent's estate). USAT may not, however, look to any recovery on the wrongful death claim for satisfaction, as that recovery would be held in trust for the statutory beneficiaries and would not become an asset of the estate. See Estate of Bogomolsky v. Estate of Furlong, Civ. A. 14-12463-FDS, 2014 WL 2945927, at *2 (D. Mass. June 26, 2014).[4] USAT concedes this outcome as to the plaintiff's negligent infliction of emotional distress claim, Doc. No. 20 at 11-12, and given the structure of wrongful death claims in Massachusetts, there is no reason for a different result as to the wrongful death claims.[5]

Count three of the plaintiff's Complaint, alleging that the decedent's death was a result of USAT's gross negligence, raises the issue of whether Massachusetts courts would enforce an indemnity contract to the extent it functioned to indemnify a party's own gross negligence. The

---

[4] In Estate of Bogomolsky, a recent decision of another session of this Court, Judge Saylor came to the same conclusion, finding that a judgment creditor of a decedent's estate would not be able to restrain the proceeds of an insurance policy distributed pursuant to the wrongful death statute, as the proceeds of the policy were held in trust for the decedent's next of kin and did not belong to the decedent's estate. Estate of Bogomolsky, 2014 WL 2945927, at *2.

[5] While the plaintiff notes that the Massachusetts Appeals Court has reserved the question of whether an indemnification provision would be enforced to effectively release the claims of people who were not signatories of such an agreement, see Post, 805 N.E.2d at 70-71, this case, as in Post, does not present that circumstance, as the indemnity agreements in this case do not purport to extinguish the plaintiff's right to bring her claims nor her right to recover on those claims.

Court has uncovered no controlling authority from the Supreme Judicial Court of Massachusetts on this issue, nor any case of the Massachusetts Appeals Court on point. In such a case, "[w]here the state's highest court has not definitively weighed in, a federal court applying state law 'may consider analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" Janney Montgomery Scott LLC v. Tobin, 571 F.3d 162, 164 (1st Cir. 2009) (quoting N. Am. Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 38 (1st Cir. 2001)).

In the closely analogous context of releases, the Massachusetts Appeals Court has held that, for reasons of public policy, a release would not be enforced to exempt a party from liability for grossly negligent conduct, though otherwise effective against ordinary negligence. Zavras v. Capeway Rovers Motorcycle Club, Inc., 687 N.E.2d 1263, 1265 (Mass. App. Ct. 1997). The Supreme Judicial Court, although not adopting that holding, has noted that public policy reasons exist for treating ordinary negligence differently from gross negligence when enforcing releases. Sharon v. City of Newton, 769 N.E.2d 738, 748 n.12 (Mass. 2002). Finally, Judge Saylor of this Court, examining this caselaw, has concluded that the Supreme Judicial Court would not enforce an indemnity agreement to the extent it provided for indemnification of a party's own gross negligence. CSX Transp., Inc. v. Mass. Bay Transp. Auth., 697 F. Supp. 2d 213, 227 (D. Mass. 2010).

This Court, having studied the caselaw, agrees with and reaches the same conclusion as Judge Saylor: specifically that Massachusetts courts would not enforce an indemnity provision insofar as it relieved a party from liability stemming from its own gross negligence. Thus, the indemnity agreements executed by the decedent are not enforceable to the extent they would

require the decedent's estate to indemnify losses arising from USAT's grossly negligent conduct.[6]

Accordingly, USAT's Motion for Summary Judgment as to the plaintiff's claims of wrongful death is ALLOWED insofar as it seeks indemnity from the decedent's estate for USAT's allegedly negligent conduct. The Motion is DENIED insofar as it seeks to satisfy the indemnity obligation from any amounts recovered on the wrongful death claim and insofar as the agreement would require the decedent's estate to indemnify liability arising from USAT's grossly negligent conduct.

B. Count 2: Conscious Pain and Suffering

The second count of the plaintiff's Complaint alleges that USAT's negligence caused the decedent's conscious pain and suffering. Under Massachusetts law, a claim for conscious pain and suffering is a claim of the decedent, which may be brought on the decedent's behalf by his or her personal representative. Gaudette, 284 N.E.2d at 224-25; see Mass. Gen. Laws ch. 229, § 6. Any recovery on such a claim is held as an asset of the decedent's estate. Mass. Gen. Laws ch. 229, § 6. By executing the two agreements, the decedent both released his claim of conscious pain and suffering caused by USAT's negligence and indemnified USAT for any losses occasioned by such a claim. Putting aside the release for a moment, if the personal representative of the decedent received any recovery for his conscious suffering, USAT would be able to reach that recovery to satisfy the decedent's indemnity obligation. See Estate of Bogomolsky, 2014 WL 2945927, at *2. Thus, USAT's Motion for Summary Judgment is

---

[6] This conclusion would gain significance if the plaintiff were to be awarded punitive damages owing to USAT's alleged gross negligence. Punitive damages awarded under the wrongful death statute, unlike compensatory damages under that statute, are considered general assets of the decedent's estate. Burt v. Meyer, 508 N.E.2d 598, 601-02 (Mass. 1987). Any punitive damages, however, could not be reached in satisfaction of the indemnity obligation because gross negligence or more culpable conduct is the predicate upon which an award of punitive damages is based under the statute. See Mass. Gen. Laws ch. 229, § 2.

8

ALLOWED insofar as the claim for conscious suffering caused by USAT's negligence was both released and indemnified.

In response to this argument, however, the plaintiff has stated her intent to proceed on the conscious suffering count only on a theory of gross negligence, and not to proceed upon ordinary negligence. As noted above, both the release and the indemnity provisions of the agreements are unenforceable to exempt USAT from liability for their own grossly negligent conduct. See CSX, 697 F. Supp. 2d at 227; Zavras, 687 N.E.2d at 1265. Thus, insofar as the plaintiff chooses to proceed on the conscious pain and suffering count only on a theory of gross negligence, USAT's Motion for Summary Judgment is DENIED. If she chooses to so proceed, the plaintiff shall amend her Complaint accordingly.

  C. <u>Count 4: Negligent Infliction of Emotional Distress</u>

The fourth and final count of the plaintiff's Complaint alleges USAT's negligent infliction of emotional distress on the plaintiff, who was present at the race venue. As an initial matter, the plaintiff, as currently denominated in the Complaint, only brings claims as personal representative of the estate of the decedent. Negligent infliction of emotional distress, however, alleges a harm directly against the plaintiff in her individual capacity, see Cimino v. Milford Keg, Inc., 431 N.E.2d 920, 927 (Mass. 1982), and thus cannot be brought in a representative capacity.

In response, the plaintiff has indicated her intent to amend her Complaint to bring this claim in her individual capacity. The Court will allow the amendment, as it is not futile in light of the Court's rulings on the indemnity agreements. The indemnity language in those agreements is broad enough to reach a claim for negligent infliction of emotional distress as a claim "aris[ing] out of" the decedent's participation in the triathlon. Thus, USAT is entitled to

9

indemnification on any losses resulting from such a claim.  As conceded by USAT, however, any recovery on the emotional distress claim would belong to the plaintiff individually, and thus USAT would not be able to use that recovery to satisfy the indemnity and may look only to the estate of the decedent.  Doc. No. 20 at 11-12.  Accordingly, the plaintiff may so amend her Complaint to perfect her claim of negligent infliction of emotional distress.

    D.    Defense Costs

USAT also claims an entitlement to defense costs arising from the provisions in the indemnity agreements obligating the signatory to defend and hold harmless USAT.  The language of the indemnity agreements does clearly obligate the decedent's estate to make USAT whole on these losses.  As with the claims discussed above, USAT may seek indemnity from the decedent's estate for their defense costs which predate this Motion as well as prospective costs to the extent that the plaintiff chooses to proceed on at least one claim which is subject to indemnification.[7]  See Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997) ("[U]nder Massachusetts law, if an insurer has a duty to defend one count of a complaint, it must defend them all." (citing Aetna Cas. & Surety Co. v. Continental Cas. Co., 604 N.E.2d 30, 32 n.1 (Mass. 1992)).

IV.    CONCLUSION

In conclusion, USAT's Motion for Summary Judgment, Doc. No. 18, is ALLOWED as set forth above insofar as USAT seeks to establish the release of the conscious pain and suffering claim and indemnity from the decedent's estate for the claims wrongful death, conscious pain and suffering, and negligent infliction of emotional distress caused by USAT's ordinary negligence.  USAT's Motion is DENIED, however, insofar as it argues for release of or

---

[7] Should the plaintiff decide to proceed only on those claims that, following the reasoning of this Order, are not subject to the indemnity obligation, the parties may request leave to brief the issue of USAT's entitlement to prospective defense costs at that time.

indemnity on any claims caused by their own gross negligence and insofar as it seeks satisfaction of the indemnity obligation from any recovery on the wrongful death or emotional distress claims. The plaintiff shall amend the Complaint within seven days to more clearly specify the capacity in which each claim is brought and add the allegations of gross negligence, both as described in the plaintiff's papers. The defendant shall respond to the Amended Complaint within seven days of its filing. The Court will hold a Rule 16 conference on October 21, 2014 at 1 p.m.

SO ORDERED.

    /s / Leo T. Sorokin
Leo T. Sorokin
United States District Judge